UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON

| | | |
|---|---|---|
| **EVERETT SROUDER** | : | **Case No.** |
| **1958 Lawerenceville Road** | : | |
| **Corinth, Kentucky 41010** | : | **Judge:**_____ |
| | : | |
| **and** | : | |
| | : | |
| **MATT WHITE** | : | |
| **321 North Main, Apt #2** | : | |
| **Williamstown, Kentucky 41097** | : | |
| | : | |
| **Plaintiffs** | : | |
| **v.** | : | |
| | : | |
| **DANA LIGHT AXLE** | : | **COMPLAINT** |
| **MANUFACTURING, LLC** | : | |
| **3939 Technology Drive** | : | |
| **Maumee, Ohio 43537** | : | |
| | : | **JURY DEMAND ENDORSED** |
| **SERVE: CT CORPORATION** | : | **HEREIN** |
| **306 W. Main Street** | : | |
| **Suite 512** | : | |
| **Frankfort, Kentucky 40601** | : | |
| | | |
| **Defendants** | : | |

Comes now the Plaintiffs, by and through counsel, and state as follows:

**JURISDICTION, VENUE, AND PARTIES**

1.      This action is brought to redress grievances protected by the laws of the United

States of America, and state law claims under the Constitution and laws of the

Commonwealth of Kentucky.

2.      This Court has jurisdiction of these matters under 28 U.S.C.§1331 and 28 U.S.C.

§1343, and 29 U.S.C. §2601, et seq.

1

3.      This Court has supplemental jurisdiction of the state law claims under 28 U.S.C.

        §1367 and the doctrine of pendant jurisdiction.

4.      Venue is proper for this action under 28 U.S.C. §1391.

5.      At all times relevant, Plaintiff Everett Srouder, was a resident of and domiciled in

        the Commonwealth of Kentucky.

6.      At all times relevant, Plaintiff Matt White, was a resident of and domiciled in

        Commonwealth of Kentucky.

7.      At all times relevant, Defendant Dana Light Axle Manufacturing, LLC,

        (hereinafter "Dana") was a foreign limited liability company authorized to and did

        operate in the Commonwealth of Kentucky.

## FACTUAL BACKGROUND

8.      Plaintiffs incorporate by reference each and every allegation contained in the

        paragraphs above as if fully re-written here, and further state:

9.      Plaintiff Srouder began working for Defendant Dana in April 2000.

10.     Plaintiff Srouder had periodically used FMLA during his employment.

11.     In 2009, Plaintiff Srouder's wife became pregnant.

12.     There were complications with the pregnancy which required Plaintiff Srouder to

        occasionally take off work.

13.     Plaintiff Srouder completed FMLA paperwork to take off as a supportive role to

        his wife's illness.

14.     The original forms were completed in late spring.

15.     Plaintiff Srouder began taking FMLA days for his wife's doctor appointments in

June.

16. Beginning in June 2009, the Human Resources coordinator, Brandy Race, started calling the doctor be confirm the appointments.

17. During June, July and August, Ms. Race threatened Plaintiff Srouder that he would incur a partial "occurrence" if he did not return to work after the doctor's appointments, even though the days were taken as FMLA days.

18. Plaintiff Srouder attempted to make appointments for the evenings, often meaning he would work a full eight hour shift, but not over-time.

19. Plaintiff Srouder did incur a half (½) occurrence for leaving early for an appointment in October 2009.

20. Defendant's policy allows for occurrences to be incurred for absenteeism and tardiness.

21. Defendant's policy allows three occurrences during a rolling twelve month year before termination.

22. Ms. Race told Plaintiff Srouder that she had the right to approve or deny any FMLA application.

23. Ms. Race told Plaintiff Srouder that she could ask for an update on FMLA paperwork any time she wanted.

24. In fact, Ms. Race frequently threatened Plaintiff Srouder that she would ask for updates to his FMLA paperwork every thirty days.

25. Ms. Race only actually asked for updates sporatically.

26. Plaintiff Srouder did incur an occurrence on October 13, 2009 and October 21,

3

2009, while taking FMLA time.

27.   After Plaintiff Srouder disputed these occurrences, they were removed.

28.   Plaintiff Srouder was moved off his assembly line position as a certified operator and in retaliation placed on "light duty" work because of his missed time due to his taking FMLA time.

29.   After complaining to production manager, Wade Wilmer, Plaintiff Srouder was replaced on the assembly line.

30.   Plaintiff Srouder's son was born November 3, 2009.

31.   Plaintiff Srouder took his son, under an emergency, to a doctor's appointment, and then to Children's Hospital on or about December 13, 2009.

32.   Plaintiff Srouder called Defendant Dana on the way to the hospital.

33.   Plaintiff Srouder informed Ben Smith and the "call line" that he would not be in the next day, Friday.

34.   Specifically, Plaintiff's Union Steward, Scott Wymer, stated he would call Plaintiff Srouder and leave a message if he was assigned weekend overtime.

35.   Plaintiff Srouder asked that if he was assigned weekend overtime, please call him, he would not be able to come into Dana to read the overtime list.

36.   It was Dana procedure and practice to post weekend overtime requirements by Friday first break on the work floor bulletin board.

37.   Manager said he would call.

38.   Manager filled out the absentee sheet as "FMLA" time and signed.

39.   Plaintiff Srouder checked his messages and caller-id several times over the

4

weekend, with no message that he was to come into work, nor any missed calls from Defendant.

40. On the following Monday, Plaintiff Srouder received a write up for missing overtime as a no show/no call.

41. Plaintiff Srouder was not advised about returning any other FMLA paperwork.

42. Plaintiff Srouder's son required another hospitalization.

43. Plaintiff Srouder called human resources.

44. Brandy Race was on maternity leave.

45. Karen Van Holten in human resources advised Plaintiff Srouder to take FMLA for January 5 through 7, 2010.

46. Ms. Van Holten advised that the existing FMLA was still good.

47. Plaintiff Srouder took emergency vacation on January 4, 2010, the first day he was off with his son.

48. As a precaution, Plaintiff Srouder called his manager on January 5, and 6 saying he was using FMLA time to be absent from work.

49. Plaintiff Srouder's manager signed the absentee form and marked "FMLA time."

50. Plaintiff Srouder returned to work on January 7, 2010.

51. On his return, Plaintiff Srouder began being harassed about the December 13, 2009, absence.

52. Plaintiff Srouder did not hear any information about the January 5th and 6th absences.

53. On or about January 21, 2010, Ms. Van Holten gave Plaintiff Srouder FMLA

paperwork.

54. Ms. Van Holten told Plaintiff Srouder to complete the paperwork because Ms. Race returned to work.

55. Ms. Van Holten did not give Plaintiff Srouder a time frame in which to complete the paperwork.

56. Plaintiff Srouder had difficulty getting into see the doctor to get the paperwork completed.

57. Ms. Race returned to work at the end of January.

58. Plaintiff Srouder received a certified letter on February 1, 2010, after working the day at Defendant Dana.

59. The letter was dated January 28, 2010.

60. This letter stated that Plaintiff Srouder had been spoken to about the FMLA paperwork on January 7th and 13th.

61. Plaintiff Srouder had only been spoken to about the paperwork on January 21st. .

62. Plaintiff Srouder was called off the floor on February 1, 2010, after working for two-and-a-half hours.

63. Ms. Race confronted Plaintiff Srouder, along with Deloris Mullins and Wade Wilmer.

64. Ms. Race demanded that Plaintiff Srouder produce his FMLA paperwork, right there, right now.

65. Plaintiff Srouder informed her he did not have the paperwork on him on the assembly floor.

66.   The paperwork was faxed to Defendant Dana from Plaintiff Srouder's doctor on February 5, 2010.

67.   While meeting on February 1, 2010, Ms. Race informed Plaintiff Srouder that January 5th and 6th were a second and third occurrence.

68.   Ms. Race terminated Plaintiff Srouder on the spot.

69.   While standing with Ms. Race, Plaintiff Srouder asked to see his attendance sheet.

70.   Ms. Race stated that it was not up to date and she didn't have it for him.

71.   Defendant Dana policy and practice is on the second occurrence, the employee is offered a "day of deliberation" to assess if he still wants to work for the company, and to write an essay regarding that.

72.   Plaintiff Srouder was not offered that option on his second occurrence, though he had been at work from January 7th to February 1st.

73.   Defendant Dana policy and practice was to offer a fifteen day grace period to complete FMLA paperwork, after it has been requested.

74.   It had been Defendant Dana policy and practice to extend an additional seven day extension to employees if there is a legitimate reason for not completing the FMLA paperwork, such as the doctor was unavailable.

75.   From the January 21st request, Plaintiff Srouder was not offered this grace period.

76.   Plaintiff White began working for Defendant Dana in September 2006.

77.   Plaintiff White suffered some medical issues from a previous car accident.

78.   In addition, Plaintiff White suffered gout.

79.   Plaintiff White had FMLA paperwork for the gout.

7

80.   This FMLA had been completed and approved through Karen Van Holten at Defendant Dana.

81.   Ms. Race required Plaintiff White to update the FMLA paperwork every thirty days.

82.   Plaintiff White's doctor had Plaintiff White off work for September 22, 23, 24, 2009.

83.   Plaintiff White returned to work on September 25, 2009, with a twenty pound lifting/pulling weight restriction.

84.   Plaintiff White informed management of his restrictions immediately upon arriving at work.

85.   Plaintiff White turned in his FMLA paperwork for the off days and the upcoming surgery on his return September 25, 2009.

86.   At the same time, Plaintiff White submitted his doctor's note regarding the weight restrictions.

87.   Half way through his shift, Plaintiff White's Union Steward, Tony Collins, and Ms. Race informed Plaintiff White he had to go home until the FMLA paperwork was completed.

88.   In addition, Ms. Race informed Plaintiff White there were problems with his FMLA paperwork not being filled out correctly.

89.   Ms. Race scheduled a meeting with Plaintiff White for the following Monday, September 28, 2009.

90.   Immediately upon arriving home, Plaintiff White called his doctor.

8

91.    The doctor was unable to see Plaintiff White to correct the paperwork until Monday morning, at the same time as the work meeting.

92.    Plaintiff White called and left a message with Ms. Race informing her of the conflict and that he would be late to the meeting.

93.    When Plaintiff White arrived at his doctor's office, he was informed that Ms. Race had called the office to confirm the appointment.

94.    During the meeting with Defendant Dana, Ms. Race, mr. Smith, or Mr. Wilmer informed Plaintiff White that he was suspended, and since he was late, the meeting would need to be rescheduled for September 30th.

95.    Ms. Race asked Plaintiff White to inform her the next time he was going to run late for a meeting.

96.    The following meeting on September 30th, Plaintiff White informed the group of his upcoming surgery in detail.

97.    Plaintiff White was informed he was not suspended, but that he would not be able to return to work until the restrictions were lifted, because there was no light duty.

98.    In fact, light duty did exist, because Plaintiff Srouder had been assigned to it in retaliation to his absences on his FMLA time.

99.    Plaintiff White tried to get his doctor to lift the weight restrictions, to no avail.

100.   Plaintiff White believed he could not return to work, as he was suspended since his weight restriction was not lifted.

101.   Plaintiff White had surgery scheduled for October 7, 2009.

102.   Plaintiff White called Karen Van Holten on October 1, 2009, to tell her the

restrictions had not been lifted.

103. Ms. Van Holten suggested that Plaintiff White complete the short term disability paperwork.

104. Plaintiff White received a certified letter on October 1, 2009 stating he had until October 7, 2009 to return the completed FMLA paperwork.

105. This letter was not received until October 6, 2009.

106. The morning of his surgery, October 7, 2009, Plaintiff White had the FMLA paperwork completed by the doctor.

107. Plaintiff White then returned the paperwork that day to Defendant Dana.

108. Ms. Race was not at her desk.

109. Plaintiff White placed his paperwork on Ms. Race's desk, where there was no other paperwork.

110. No other employees were near Ms. Race's desk at the time.

111. After returning home from the surgery, Plaintiff White received a certified letter.

112. The letter was dated October 5, 2009, stating that he had voluntarily resigned due to no show/no call.

## COUNT I - WRONGFUL DISCHARGE/RETALIATION

113. Plaintiff incorporates by reference each and every allegation contained in the paragraphs above as if fully re-written here, and further states:

114. During the course of Plaintiff Srouder's employment, he regularly received favorable performance and attendance reviews.

115. Beginning in 2009, Plaintiff Srouder was required to take FMLA leave due to the

10

pregnancy of his wife, and the illness of his son.

116.   Plaintiff Srouder subsequently gave Defendant notice regarding the medical conditions and the need for reasonable leave.

117.   Plaintiff Srouder made good faith efforts to arrange in advance for his absences.

118.   Plaintiff Srouder made good faith efforts to complete all required paperwork for FMLA leave.

119.   Rather than reciprocating with good faith efforts to accommodate Plaintiff Srouder, the Defendant caused Plaintiff Srouder to incur unnecessary occurrences.

120.   Defendant improperly and without cause terminated Plaintiff Srouder for the use of his FMLA time.

121.   During his employment, Plaintiff White regularly received favorable performance and attendance reviews.

122.    Beginning in 2009, Plaintiff White was required to take FMLA leave due to an illness.

123.   Plaintiff White subsequently gave Defendant notice regarding the medical conditions and the need for reasonable leave.

124.   Plaintiff White made good faith efforts to arrange in advance for light duty under his work restrictions, and for his absences.

125.   Plaintiff White made good faith efforts to complete all required paperwork for FMLA leave.

126.   Rather than reciprocating with good faith efforts to accommodate Plaintiff White, the Defendant suspended Plaintiff White.

11

127.    Defendant improperly and without cause terminated Plaintiff White for the use of his FMLA time.

## COUNT II - INTERFERENCE WITH FMLA RIGHTS

128.    Plaintiff incorporates by reference each and every allegation contained within the above paragraphs and further states:

129.    Plaintiff Srouder was an eligible employee under FMLA.

130.    Defendant is a covered employer under FMLA.

131.    Plaintiff Srouder's immediate family, wife and son, had serious medical conditions.

132.    Defendant interfered with Plaintiff Srouder's rights under FMLA.

133.    The Defendant communicated to Plaintiff Srouder that he was terminated for occurrences.

134.    Plaintiff Srouder had requested and received FMLA leave from Defendant and had appropriate medical documentation for all missed work.

135.    Plaintiff Srouder was damaged by Defendant's violation of FMLA as stated above.

136.    Plaintiff White was an eligible employee under FMLA.

137.    Plaintiff White had a serious medical condition.

138.    Defendant interfered with Plaintiff White's rights under FMLA.

139.    The Defendant communicated to Plaintiff White that he was terminated for incomplete FMLA paperwork, two days before the paperwork was required to be returned.

140.    Plaintiff White had properly and timely requested FMLA leave from Defendant

and had appropriate and timely medical documentation for all missed work.

141.    Plaintiff White was damaged by Defendant's violation of FMLA as stated above.

### PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiffs respectfully request that the Court grant the following:

A)    A judgment for compensatory damages for Plaintiffs' economic injuries;

B)    A judgment for compensatory damages for Plaintiffs' non-economic injuries,

including emotional pain and suffering and lost opportunity, in an amount to be

determined at trial;

C)    A judgment award of punitive damages in an amount to be determined at trial;

D)    A judgment award for Plaintiffs' reasonable fees and costs;

E)    Any such other relief in law and equity the Court deems just and proper.

s/Eric C. Deters
ERIC C. DETERS (81812)
Eric C. Deters & Associates
5247 Madison Pike
Independence, Kentucky 41051
(859) 363-1900 Phone
(859) 363-1444 Fax
eric@ericdeters.com

### JURY DEMAND

Plaintiffs demand a jury trial on all issues triable to a jury in this matter.

Respectfully submitted,

s/Eric C. Deters

Eric C. Deters