UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CIVIL ACTION NO. 10-155-WOB-CJS

EVERETT SROUDER
AND
MATT WHITE                                              PLAINTIFFS

VS.                          MEMORANDUM OPINION
                                  AND ORDER

DANA LIGHT AXLE
MANUFACTURING, LLC                                     DEFENDANT


        This matter is before the Court on Defendant's Motion for
Summary Judgment (Doc. 31) as to claims asserted by Plaintiff
Matt White ("White").  The Court heard oral argument on this
motion on March 26, 2012. James Moore represented Plaintiff
White and Karen Paulin represented Defendant Dana Light Axle
Manufacturing, LLC ("Defendant").  Official court reporter Joan
Averdick recorded the proceedings.

                  *Factual and Procedural Background*

        In September 2006, White began working as an assembly
worker for Defendant, who manufactures driveline products, power
technologies, and genuine service parts for light- and heavy-
duty vehicle manufacturers.  Although White was a satisfactory
worker, he had a history of attendance issues.  (White Depo. at
42-49).

                                   1

**<u>Defendant's Relevant Policies</u>**

In order to keep the assembly lines running, Defendant employed a strict "no-fault" Attendance Policy at all relevant times.  (Doc. 31-2, Race Aff., at ¶ 7).  Under this policy, an employee would be assessed either a complete or partial occurrence for all time missed from work, except as otherwise provided in the policy.  (*Id*., Attendance Policy, at 16).  Three occurrences within a twelve-month period resulted in the employee's termination.  (*Id*. at 17).

For each and every day an employee was absent, excused or unexcused, the employee was required to call the "call-in line" before the shift start time.  (*Id*.); (White Depo. at 31) (stating that "if you were going to be absent, you had to call in").  If an employee was absent for two days[1] without calling in, and he had not previously arranged for extended leave, he was deemed to have "voluntarily" quit.  (Doc. 31-2, Attendance Policy, at 16).

Defendant's Family and Medical Leave Act ("FMLA") policy permitted an employee to take leave for either his own serious health condition or that of his immediate family.  (*Id*. at 26).  The FMLA policy provided:  "Dana requires medical certification to support a request for leave because of a serious health

---

[1] It appears that this policy was changed when a new Employee Handbook was issued in November 2009, shortly after White's termination.  Under that policy, an employee who was absent for three consecutive days without calling in was deemed to have voluntarily resigned.

condition," and "[t]aking leave may be denied or delayed if requirements are not met." (*Id.* at 27).

**White's History of FMLA Use**

Throughout his employment, White used FMLA leave for several medical conditions, including gout, chronic back pain, and other leg and foot pain unrelated to the gout.[2] (White Depo. at 60, 63, 65, 66). On each occasion, White called the call-in line and stated that he was taking an FMLA day.

Although White regularly used FMLA leave, his medical certifications were often incomplete, missing critical information such as the physician's signature or the medical diagnosis. He was counseled by Human Resources on several occasions about these insufficiencies. (*Id.* at 87);(Doc. 31-2, Race Aff., at ¶ 26).

Toward the end of August 2009, White took several days off asserting FMLA leave. (White Depo. at 70). Brandy Race ("Race"), the Human Resources Manager, requested medical certification supporting this leave, and White timely submitted the certification. (Doc. 31-2, at Race Aff., at ¶¶ 27-28). However, the certification was incomplete, and Race gave White

---

[2] He also suffered from hernias and had several hernia repair surgeries before he worked for Defendant, but he never took FMLA leave for his hernia condition prior to the surgery scheduled for October 2009. (*Id.* at 104-105).

seven additional days to provide a completed certification.[3] (*Id.* at ¶ 28).

While this certification issue was still pending, White again took FMLA leave, and the deadline for providing the revised certification supporting the August absences expired while he was absent. (White Depo. at 74-75). When White returned to work, two days after the extended deadline, he submitted the medical certification to Karen Van Holten ("Van Holten"), the Human Resources Supervisor. (Doc. 31-5, Van Holten Aff., at ¶ 22).

However, the certification was still incomplete, so White was sent home, and a meeting was ultimately held on September 30 to discuss the recurring issue. (*Id.*); (Doc. 31-2, Race Aff., at ¶¶ 30-31).

**The September 30 Meeting[4]**

With regard to White's tardiness in providing the required certification, White explained that he failed to submit the medical certification by the deadline because he was ill. (Doc. 31-2, Race Aff., at ¶ 32). Race's notes memorializing this meeting reflect that he stated "he was sick and had a hole in his stomach and that he was going to have surgery soon." (*Id.*,

---

[3] Around this time, White began to suspect that he might have a hernia. Therefore, he visited a doctor during his off-work hours, who then referred him to a surgeon. (Doc. 31-10, at 6). Eventually it was confirmed that he had a hernia and would require surgery.

[4] There is some dispute as to what was said during this meeting, but this dispute is not material.

Exhibit 14, at 69).  In light of that explanation, Race, who had previously decided to terminate White, changed her mind.  (*Id.*, Race Aff., at ¶ 32).  She also agreed to accept the late submission of the certification in that instance.  (*Id.*, Exhibit 14, at 69).

Additionally, White submitted a separate medical certification supporting the days taken in September,[5] and this certification explained that White was being referred to a surgeon for evaluation of a possible hernia.[6]  (Doc. 31-2, Race Aff., at ¶ 33); (*Id.*, Exhibit 16, at 76).

White also submitted a physician's note restricting him from lifting more than twenty pounds.  (*Id.*, Race Aff., at ¶ 33).  Race informed White that, with this restriction, there was no assignment currently available for him at the plant.  (*Id.*, Exhibit 14, at 69); (White Depo. at 98-99).  White then volunteered to get the restriction lifted and stated that he would do that and be at work the following day.  (Doc. 31-2, Exhibit 14, at 69); (White Depo. at 80-81).

---

[5] However, this certification was also missing important information, which Race detailed in a memorandum to White dated October 1, 2009.  (*Id.*, Exhibit 16, at 74).  This memorandum gave White an extension to provide the completed certification, requiring that it be returned by October 7, 2009.  (*Id.*).

[6] In fact, at this point, White had already seen the surgeon, who had confirmed the existence of the hernia.  (White Depo. at 109, 112).  A hernia repair surgery was scheduled for October 7, and the surgeon had informed White that he would need six to eight weeks to recover.  (*Id.* at 119).  However, the FMLA certification did not include this information.

White further stated that he had received short-term disability paperwork from Van Holten, and that he would complete it and return it the next day.  (Doc. 31-2, Exhibit 14, at 70).

He also informed them that he might need surgery but, according to Race, he did not specify the reason for the surgery or that it had already been scheduled for a date certain.  She testified that at no time during this meeting did White use the word "hernia."  (*Id.*, Race Aff., at ¶ 33).

Conversely, White testified that he expressly informed Race that he was having hernia surgery the following week and that he would need to visit the doctor for pre-operation preparation on Friday, October 2.  (White Depo. at 80).

At the conclusion of the meeting, Race understood that White would be returning to work the following day.  (Doc. 31-2, Race Aff., at ¶ 33).

After the meeting, White attempted to have the lifting restriction removed but the doctor refused.  (White Depo. at 81).  White then contacted Van Holten and told her that the doctor would not remove the restriction, and she suggested that he obtain short-term disability paperwork.[7]  (*Id.*).

**October Absences**

---

[7] Van Holten testified that she did not receive a phone call from White regarding the status of his lifting restriction.  (Doc. 31-5, Van Holten Aff., at ¶ 24).  She also testified that White did request short-term disability paperwork at some point in late September 2009, which she provided to him.  (*Id.* at ¶ 23).

6

It is undisputed that White was absent on October 1, 2, 5, and 6, and he failed to call in as required by Defendant's Attendance Policy.  (Doc. 31-2, Race Aff., at ¶ 36); (White Depo. at 94-95).

White testified that he did not come to work because he was unable to get his lifting restriction removed, and had been told he could not work because there were no light-duty assignments available.  (White Depo. at 98-99).  He further testified that he did not call in because they knew he would not be there and, because he was unable to work, he believed that he did not need to call in.  (*Id.* at 94, 99).

Pursuant to Defendant's policy, White's continued failure to call in his absences resulted in a "voluntary quit."  On October 6, 2009, Race mailed White a termination letter to that effect.[8]  (Doc. 31-2, Race Aff., at ¶ 36).

On October 7, 2009, before White had received the termination letter, he took the certification supporting the September absences, which did not mention the hernia surgery, and placed it on Race's desk before he went to the hospital for his hernia surgery.  (*Id.* at ¶ 38); (Doc. 31-16, Exhibit O).

---

[8] The letter states: "[a]s of Monday, October 5, 2009, our records indicate that you have been absent for more than three (3) consecutive working days without notifying your Supervisor.  As stated in the union contract under Article 22, our records will indicate you are voluntarily resigning from your role at Dana."  (Doc. 31-2, at 80).

On October 9, 2009, White submitted short-term disability paperwork which purported to cover the hernia surgery and the six-week recovery period.  (Doc. 31-2, Race Aff., at ¶ 39).

Importantly, White concedes that he never provided Defendant with FMLA medical certification regarding the hernia repair surgery or the recuperation time either before or after his termination.  (White Depo. at 132-34).

White filed his Complaint (Doc. 1) on July 16, 2010, alleging claims of FMLA interference and retaliation, and an Amended Complaint was later filed (Doc. 15).  Defendant filed its Motion for Summary Judgment on November 15, 2011.  (Doc. 31).  In his response, White abandoned his retaliation claim. (Doc. 32, at 1, n.1).  Accordingly, only White's interference claim remains before the Court, and it is ripe for adjudication.

### *Analysis*

**A.**    <u>**Summary Judgment**</u>

Rule 56(a) of the Federal Rules of Civil Procedure provides in relevant part that: "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Rule 56(c)(1) further provides that:

> A party asserting that a fact cannot be or is genuinely disputed     must     support     the     assertion     by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

Under Rule 56, the moving party bears the burden of proving that no genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. *Id.* at 587.

In reviewing a motion for summary judgment, a court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

**B.   FMLA Interference Claim**

To establish an interference claim under the FMLA, a plaintiff must demonstrate: (1) he was an eligible employee; (2) the defendant was an employer under the FMLA; (3) he was entitled to FMLA leave; (4) he gave sufficient notice of the leave; and (5) the employer denied the employee FMLA benefits.[9]

---

[9] There is no dispute that Dana is an "employer" as defined by the FMLA, and for purposes of summary judgment, Defendant conceded that White was an "eligible employee." (*See* 31-1, at 21 n. 13).

*See Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 507 (6th Cir. 2006).

The parties focus their arguments on whether White provided Defendant with sufficient notice of his upcoming hernia surgery during the September 30 meeting, thus entitling him to FMLA leave.  White contends there is a genuine issue as to this fact, thus precluding summary judgment.

However, after careful review of the record, the Court concludes that this dispute of fact is not material because the undisputed evidence demonstrates that: (1) White does not contend he was entitled to FMLA for the absences resulting in his termination; and (2) he was terminated for his failure to comply with the call-in requirement of the Attendance Policy, not for any issue relating to FMLA leave, and therefore Defendant did not interfere with White's FMLA benefits.

Importantly, White does not contend that he was entitled to FMLA leave for the absences which resulted in his termination. He specifically testified that he did not work those days because he was unable to have his lifting restriction removed, and so he believed there was no work for him.  (White Depo. at 94).

While White argues that he was entitled to leave for his hernia surgery, he was not terminated for absences on or after his hernia surgery.  In fact, he had been deemed to have

voluntarily quit *before* his hernia surgery, and so whether he was entitled to FMLA leave for the hernia surgery is irrelevant.

Additionally, even if White argued that his lifting restriction somehow qualified him for FMLA leave for those days, he concedes that he never provided Defendant with FMLA medical certification supporting this condition during these days. (*Id*. at 132-34). The certification he provided Defendant on the day of his surgery mentioned the lifting restriction, but it supported the September absences, not the October absences. (*See* Doc. 31-16, at 3). Additionally, the only documentation addressing the hernia surgery and related time off was the short-term disability paperwork, not an FMLA certification. (*See* Doc. 31-2, at 87).

Moreover, all of this documentation was submitted after White had already been terminated and, therefore, his claim cannot lie. *See Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 451 (6th Cir. 2004) (concluding that an FMLA claim fails where the plaintiff failed to notify his employer of his qualifying condition and to request leave for such condition *during his employment*, but only did so after his employment had ended).

However, even assuming White was entitled to FMLA leave for the days supporting his termination, the undisputed fact remains that he did not call-in as required by the Attendance Policy.

An employer is permitted to implement leave policies, such as call-in requirements, to ensure that employees do not abuse leave, and these policies are enforceable even during FMLA leave. *See Allen v. Butler Co. Comm'rs*, 331 F. App'x 389, 396 (6th Cir. 2009). *See also Callison v. City of Philadelphia*, 430 F.3d 117, 121 (3d Cir. 2005) (recognizing that the FMLA does not entitle employees to a variance from neutral rules).

"An employee lawfully may be dismissed, preventing him from exercising his statutory rights to FMLA leave or reinstatement, but only if the dismissal would have occurred regardless of the employee's request for or taking of FMLA leave." *Arban v. West Publ'g Corp.*, 345 F.3d 390, 401 (6th Cir. 2003) (citing *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1262 (10th Cir. 1998)). *See also Edgar*, 443 F.3d at 508 (noting that "interference with an employee's FMLA rights does not constitute a violation if the employer has a legitimate reason unrelated to the exercise of FMLA rights for engaging in the challenged conduct").

It is undisputed that White was absent October 1, 2, 5, and 6, and that he did not call in on any of these days. (White Depo. at 94-95). White's termination letter clearly states that he voluntarily quit because he was absent for more than three

days[10] without calling in, and this reason is in no way related to his use of FMLA leave.  (Doc. 31-2, Exhibit 17, at 80).

Therefore, White's failure to comply with the requirements of the Attendance Policy justified White's termination, and Defendant did not violate the FMLA.[11]  *See Huberty v. Time Warner Entm't Co*., No. 5:10cv2316, 2012 WL 406983, at *6 (N.D. Ohio Feb. 8, 2012) (concluding that an employer's termination of an employee for failure to call in as required under an attendance policy did not constitute interference with FMLA rights).

### *Conclusion*

Therefore, having reviewed this matter, and the Court being otherwise advised, **IT IS ORDERED** that Defendant's Motion for Summary Judgment (Doc. 31) be, and is hereby, **GRANTED**. Plaintiff White's claims[12] are hereby **DISMISSED WITH PREJUDICE.**

This 30th day of March, 2012.



**Signed By:**

*William O. Bertelsman* WOB

**United States District Judge**

---

[10] While the Attendance Policy in place at that time stated that a voluntary quit occurred after two consecutive days, the policy was changed around the time of White's termination, which likely accounted for the letter's reference to three, rather than two, days.

[11] Because the Court concludes that White's claim fails on this ground, it will not address the parties' arguments regarding the sufficiency of notice.

[12] In the Amended Complaint, Plaintiff White refers to claims brought pursuant to state law.  However, as he has failed to develop these claims or even mention them in his Response to the Motion for Summary Judgment, the Court presumes that he has abandoned them.